We're ready to resume argument, and now we have Hinkes v. Reddy. Ms. Major. Thank you. May it please the Court? Arbitration awards deserve deference, but even deference has limits. Ms. Major, before we get to the substance of review of arbitration, I wonder about subject matter jurisdiction. Subject matter jurisdiction appears to depend on diversity of citizenship, but the plaintiff is a citizen of Illinois, as is Mr. Reddy. So how do we have diversity? Well, where we're at right now, procedurally, is we're seeking review of this arbitration agreement and the actions of the arbitrator in carrying out the terms of the arbitration agreement. I understand that you're challenging what the arbitrator did, but if the district court does not have diversity jurisdiction, you can't do that. That's correct, Your Honor. And so far as I can see, the district court doesn't have diversity jurisdiction because citizens of Illinois are on both sides of the case. But at this level, right now, on this appeal and in the court, the district court, we're only challenging… The district court does not have diversity jurisdiction. It doesn't matter what relief you're asking for or who you are asking for relief from. If you sue nominally under the diversity jurisdiction, and a citizen of state A is a plaintiff, and there are citizens of states A and B as defendants, the only thing the district court can do is dismiss the suit. You can't order relief against defendant B. You're assuming that the judge can, but that's not right. Now, if Reddy were dismissed as a party, that would solve the problem, but Reddy seems to be a party. We checked to see whether he had ever been dismissed. Well, the proceeding that was in front of the district court was a proceeding just seeking review of the decision… There is jurisdiction of a case or there is not. Okay. Well, Your Honor, the way I understand the law is that what's going on right now is we're seeking to enforce the contract as against just one party and for that party. But that's not my position. I mean, that's how I understand it. And there's nothing… I can't go beyond that, but that is what we're doing here is just challenging the contract as to one party. Suneera? Exactly. Have you considered exercising your rights under 28 U.S.C. 1653? Your Honor, I'm… It's the statute that permits the amendment of jurisdictional allegations even in the court of appeals. Well, if that's the case, then I would seek it because we are only proceeding against Suneera, and for Suneera there is diversity. And I understand, Your Honor, and it was something we looked at, but we are only seeking to enforce the contract and to… It's not a question of what relief you are seeking. I hope I'm playing. There has to be diversity jurisdiction. You can't manufacture diversity jurisdiction by saying, well, I've sued a nondiverse defendant, but I'm not seeking any relief against him. That doesn't work. Well, Your Honor, I'm fine with amending it, but all I'm telling you is the way I'm interpreting the law, which is that the proceeding in the district court in here is solely, as I understand what the courts have said, is essentially a breach of contract matter in the district court of the arbitration agreement. I'm certainly not basing it on the underlying claims, for which there would be clearly diversity, which is Title VII or the Americans with Disabilities Act. But I am saying that when we seek review, we are only seeking review of the contract and the arbitrator's… What case do you rely on for the proposition that you can use the diversity jurisdiction in a case with a nondiverse defendant to seek relief against some other defendant? I'm not sure there is a case on that point. I don't think there's any case holding that. Right, right. That's your problem. Right, but there's always a case of first impression, so Your Honor… Yes. No. Okay. The United States diversity jurisdiction has been around for more than 250 years. The Supreme Court has said that complete diversity is essential. That's the ruling of Strawbridge. It's the foundation of our understanding of the diversity jurisdiction. There's no exception to Strawbridge for cases in which I only want relief against the nondiverse defendant. Strawbridge is what it is. But all I'm saying is that the review… You don't want to spend your time arguing about this. Okay. You have a remedy under Section 1653, but whether you use it is up to you. Your Honor, I'm happy to assert that right now. No, you can't do that. Okay. Read the statute and follow the statute. Okay. So, going on with the issues that we've raised here, do you want me to continue to argue the issues here? This is your only chance. Okay. Your Honor… Okay, I'll start you off. Okay. Why should Williams' testimony regarding Palmieri's statement be considered hearsay here, where it is not used to establish the truth of the matter? Well, Your Honor… Isn't it irrelevant of that testimony to establish what Reddy had been told as to her reputation with Oracle, not to prove that she, in fact, acted in some unprofessional manner? Well, the problem is that under federal case law, my client can defeat their claim, their pretext. We call it pretext. She can defeat it by proving that, for example, Ms. Palmieri never even made those statements. Okay? So, if we had had a chance to know that Ms. Palmieri was a witness, which she's never been identified in a single document ever in this case as a witness, not an answer, not an answer to discovery, no deposition, nothing. If Mr. Williams was and had you deposed him, probably, I would imagine, this would have come out. But that's not, Your Honor, that's not how the Michigan court rules work or the federal rules of civil procedure. You can't give one witness and conceal another witness and say, well, maybe they'll figure it out if they depose every single person that we've identified. They had an affirmative duty to disclose everybody who had information, and that certainly included Ms. Palmieri. And if they had disclosed her and if they had said, she has information that Mr. Reddy relied on in making this determination, we sure would have deposed her.  Well, the arbitrator never mentioned Palmieri's statement regarding Ms. Hinks in discussing the basis for the testimony. Yes, he did. In fact, the arbitrator, in the testimony, they said it was the last straw, the defendants did, and the arbitrator, two comments, very significant in his ruling. One, he says, just before that statement was learned, what was the status of Ms. Hinkes's employment? Would she have been terminated without the Palmieri statement or would she not have been? And this is what the arbitrator said. The emails that were sent out before the Palmieri statement. Where are you looking at? This is the PSA, page 3. Were incompatible with having already decided Hinkes was to be terminated. One statement by the arbitrator. Another one, the email that was sent out before the Palmieri statement reveals the opposite of a termination decision. Those are quotes from the arbitrator. So the arbitrator, this isn't a case where at the time of the Palmieri decision, the arbitrator found, oh, there are other reasons that also factored into this. The arbitrator found that there were no, at that time, they were not going to terminate my client. Then this mysterious statement, never disclosed anywhere, comes up. By a witness, never disclosed anywhere. You know, this is, they were required under this arbitration agreement to follow the Michigan court rules and the AAA rules. Unlike many of the contracts that come before this court, where the arbitrator has discretion to follow or not follow. Can I just get one question in here?  Okay. So, I understand your theory here. Okay. What I don't understand is how it has anything to do with gender, race, or national origin discrimination. I'm only... Go ahead. I believe I'm only... All of this comes down to the issue of, was the reason for the termination pretextual? That's the issue. Okay? And she filed it under several statutes. He found that they were lying, and he found that her disability did factor into this. So he found that the treatment, that her termination was motivated by her disability. So if you have a federal claim, if your client has a federal claim, it's an ADA claim. Yeah, and I believe that's what we're proceeding on in this appeal. I think it's under the ADA. All right, there's a whole... The complaint does. The complaint had more claims. But I believe the appeal, because what he found was, he made a finding that her disability did factor into her termination. But he found that this final straw... Yeah, I understand. I got it. It wasn't clear from the briefs to me as to what's going on with the federal discrimination claims.  There's a whole bunch of them. Okay. Well, it is the ADA. Okay, thank you, counsel. Okay, thank you. Mr. Swieckowski. Good morning, judges, and please, the court. Matt Swieckowski is counsel for Appellee Sonera Technologies. Judges, Appellant Hinkes asked this court to reverse the district court's confirmation of the arbitration award, which is unprecedented relief in the circuit. Hinkes does not cite... I have the same question for you that I had for Ms. Major. Why is there subject matter jurisdiction in this case? Your Honor, Ms. Hinkes was asked to file an amended jurisdictional statement earlier in this appeal, and I believe she clarified that she's only proceeding this appeal against Sonera Technologies, Inc., which is a Michigan corporation. I know that's what she says. You're not dealing with my question. Why is there subject matter jurisdiction in this case? If she's only proceeding... Her assumption is that if you... Well, I've already gone through this. You've heard the question. Yes. How is it that without complete diversity of citizenship, there can be relief against any defendant? I think that the 1653 statement that Your Honor pointed out earlier would be in order. I believe she's intending to go only against Sonera Technologies. So, in other words, your view is that there is not subject matter jurisdiction? As currently postured and pled with the inclusion of Mr. Reddy, who is an Illinois citizen, as you pointed out, there are Illinois citizens on both sides of the V currently, Judge. In any event, Judges, Hinkes does not, as I mentioned, she does not cite a single case from the circuit to justify her unprecedented request for relief, vacating the arbitration award under 10A3 and or 10A4 of the FAA. These narrow grounds to vacate an arbitration award have never, at any time, been successfully applied to overturn an arbitration award in the circuit. And the facts of this case, Judges, are certainly not grounds for this court's first decision in its history to apply 10A3 and or 10A4 to vacate an arbitration award. Indeed, Hinkes' minor evidentiary quibbles are not even supported by the record. She argues that she's entitled to a requested relief for two reasons. First, as your honors know, she complains that Tara Palmieri, an individual that importantly was never called as a witness to the arbitration hearing, should have been listed in Sunera's initial disclosures. This is a new theory. Hinkes did not make any objection at the arbitration that anyone had not been properly disclosed. Her only objection at the arbitration was on the basis of hearsay. But even if Hinkes had made such an objection at the arbitration, it would have been properly overruled. Second, the applicable Michigan court rule, like Federal Rule 26, does not require disclosure of any and all conceivable persons who may have knowledge of any aspect of the case. They are intended, Judges, for disclosures of persons with information that the disclosing party may quote. I must say, maybe I should have said this during Ms. Major's argument, but I don't understand what any of this has to do with the Federal statute. The Federal statute says that an arbitrator's decision may be set aside for misconduct. The plaintiff's assumption is that an error is the same thing as misconduct, and you seem to be engaging the same assumption. But we reverse district judges for making errors all the time, but we don't say, and therefore Judge X has engaged in misconduct. We say Judge X has made an error. That's the line drawn by the Federal statute. There's a difference between making an error and engaging in misconduct. So why should an error be the same thing as misconduct? I don't believe an error is the same thing as misconduct. Far from it. I'm saying that they have not cited any case to say that this is misconduct, and in addition, Judge, there was no error. That's my only point in getting to the minutiae. But I don't think that under the Arbitration Act, whether there is an error matters. Only whether there is misconduct matters. I fully agree with you.  What was the Palmieri statement introduced to establish that Miss Hinckley's, in fact, acted in an unprofessional manner? Or was it used to establish what Redding knew before terminating her, including complaints of unprofessional conduct? It was not. I'm sorry, Judge. Her behavior by Oracle persons. It was not offered for the truth, and the arbitrator took his time to make sure he was clear on that and questioned the witness himself. It was not offered for the truth of the matter, sir. It was not offered to prove that she engaged in misconduct. It was offered to prove the effect on the Oracle client, which is relevant because she was hired to service this Oracle client as part of her main job responsibility. And which, I mean, do you agree or disagree that the arbitrator didn't mention her Palmieri statement regarding Miss Hinckley's in discussing the basis for the termination decision? I agree. I agree with that completely. And the district court, Judge Hunt, found the same. Soon there was principle. Mr. Reddy testified in the arbitrator found and Judge Hunt found that just Hinkes is justifiable. Non-discriminatory termination was not based on Palmieri statement. Instead, it was based on, quote, ample and mounting evidence of justice, sufficient cause for termination. That included failing to book a single penny of revenue, which is a problem for a sales representative, and it's a violation of her contract. In subordination to her employer, she incurred massive expenses that exceeded her salary at Sunera. And for many, failure to achieve a technical certification that she needed to perform her job, various and sundry other reasons that are listed in the briefing and the arbitrator's decision, Judge. And is it so that she only worked at Sunera for five months? That's correct. She only worked at Sunera for five months. So your point is that, yeah, the testimony, what happened in the deposition testimony happened in the deposition testimony. We can read it and see it. But it had nothing to do with the ultimate decision. Absolutely. And that is absolutely what district court Judge Hunt found when she confirmed this arbitration award, Judge. Hinkes also advances on appeal an argument that the arbitration decision should be vacated because we introduced two exhibits, three pages of documents to impeach her and or refresh her recollection as to whether she received the employee handbook. Had she submitted any discovery requests that sought such documents or for which such documents were relevant and should have been produced? She submitted discovery requests, Your Honor. And the arbitrator actually invited, and this is in my brief, the arbitrator invited Hinkes's counsel to point out the specific request to which she contended the document should have been produced. She was given that invitation and she never took him up on it. You should face the bench when you're answering. Judge Rovner is not in the screen. Yes. He will actually see you best if you face the camera. Thank you. I'm sorry. I wish I were where you are. So Sunera was, of course, entitled to arbitration to impeach Hinkes's incorrect testimony that she had not received the employee handbook and to refresh her recollection that she had, in fact, received the employee handbook and reviewed all the policies. So here again, the argument advanced by Ms. Hinkes on appeal is specious and frivolous. Hinkes has not advanced a single colorable ground for her appeal and request for relief in this court. Her appeal is not supported by a single opinion of the circuit or any other. She cites various cases from other circuits that are decades old. That doesn't make them wrong. Judge, there's simply no legal foundation for her claims and for her appeal in this court. And Sunera requests that the court affirm the district court's well-reasoned decision confirming the arbitration award in favor of defendants. Thank you. Thank you very much. The court directs the parties to file supplemental memoranda within 14 days addressing the question whether the court has subject matter jurisdiction. The memos should address both Section 1653 and Newman Green v. Alfonso Lorraine. When they have been received, the court will take the case under advisement.